ROLLINS v. SIDNEY B. BOWMAN CYCLE CO.

(Supreme Court, Appellate Division, First Department. June 5, 1903.)

1. AGENCY—RATIFICATION OF CONTRACT—RATIFICATION IN ENTIRETY.

Where plaintiff called at the place of business of defendant, a repairer of bicycles, and left his bicycle for repairs with one whom he found in charge, it being agreed between them that the machine should be repaired and shipped to plaintiff and the amount of the repairs charged to him, the subsequent act of defendant in accepting the machine and repairing it was a ratification of the contract of its agent to whom the machine was delivered, and hence defendant was bound to ship the bicycle, and was liable in damages for holding it for the repair charges.

McLaughlin and Laughlin, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by Jordan J. Rollins against the Sidney B. Bowman Cycle Company. From a judgment for defendant, plaintiff appeals. Reversed.

Argued before HATCH, McLAUGHLIN, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Theodore H. Lord, for appellant.

Richard T. Greene, for respondent.

INGRAHAM, J. The complaint alleges that the plaintiff, the owner of a bicycle, applied to the defendant to make certain repairs to it,

and to place it in good working order and satisfactory condition, and delivered the same to the defendant, who thereupon agreed to perform the said repairs and to place the bicycle in good working order, and ship the said bicycle so repaired to the plaintiff at Portland, Me., by the American Express Company, on or before the 14th day of July, 1899, and to prepay the express charges thereon; that the plaintiff agreed that after the receipt by him of the said bicycle in Portland, Me., he would pay for said repairs the reasonable value thereof, and would reimburse the defendant for the amount paid by it for the transportation of the said bicycle from New York City to Portland, Me.; that the defendant did not make the repairs and did not ship the said bicycle to the plaintiff on or before the 14th day of July, 1899, or at any other time, but that the defendant refuses to do so, and retained, and still retains, possession of said bicycle; that, relying on said promises, the plaintiff, as the defendant well knew, agreed with another person to start from Portland, Me., on his said bicycle in the latter part of July, 1899, for a trip to Quebec; and that, in order to keep his said agreement, the plaintiff was compelled, by reason of the defendant's breach of the said contract, to purchase another bicycle; that the lowest price at which the plaintiff could procure the same was the sum of $79, which the plaintiff paid for the other bicycle, and, in addition thereto, paid the sum of $4 in communicating with the defendant to ascertain whether the said bicycle had been shipped as agreed. Wherefore the plaintiff demanded judgment for this sum of $79 and $4 damages for a breach of the contract.

The defendant admits that the plaintiff left the bicycle with the defendant to be repaired; alleges that the defendant completed said repairs, and on or about July 14, 1899, notified the plaintiff by letter that the said repairs were completed, and that the bicycle was ready for shipment, and sent to the plaintiff a statement of its bill for making said repairs, requesting him to pay the said bill, and notifying him that upon such payment the bicycle would be shipped, and offering to ship the bicycle to the plaintiff C. O. D.; that the plaintiff thereupon refused to pay to the defendant its bill for repairs, and refused to authorize the defendant to ship the bicycle to him C. O. D. as aforesaid; and by way of counterclaim the defendant asks for judgment against the plaintiff for the amount of the repairs. These allegations of the answer were denied by the reply.

The plaintiff testified that prior to July, 1899, he had work done by the defendant, which had been charged to him, and that upon receipt of bills therefor that work was duly paid for; that in July, 1899, he took his bicycle to the defendant company; that he saw a gentleman in charge of the defendant's office, and told him that he (plaintiff) was planning a long bicycle trip from Maine into and through Canada, and that he wanted his bicycle put in such perfect condition that there would be very little likelihood of any accidents occurring during the journey. He further testified:

"I told him that a friend of mine was to meet me in Portland, Maine, from which place we were to start on our trip, and that we had planned to go on a given date, and I asked him if he would be certain that the bicycle

was put in proper condition, shipped to me in Portland, Maine, by the American Express Company, in care of a friend of mine there, and charge the repairs and express to my account; that I would pay him upon my return to the city. He said that he would certainly do it, and I then requested that he make certain to have the wheel there at that time. He said that he would."

That about July 14th plaintiff was at Portland, when he discovered that the bicycle had not arrived, and thereupon telephoned to the defendant company in New York, and subsequently received a letter from the defendant, dated July 18, 1899, as follows:

"Sir: The bicycle you left with us for repairs is ready. We presented bill for same at your office, but could not collect. So we are mailing bill to address given us, and upon receiving your remittance we will at once ship bicycle per Adams Ex. We regret that you have no a/c with us, so that we could ship wheel without this annoyance.
    "Yours truly,                        S. B. Bowman Cycle Co."

That he subsequently received a letter dated July 21, 1899, as follows:

"Dear Sir: Your telegram to hand. As we have already stated, we have no account with you. Apart from this, repair jobs are always spot cash. If you will either send us check for inclosed bill or instructions to ship C. O. D., we will at once send wheel. Trusting this will be satisfactory,
    "Yours truly,                        S. B. Bowman Cycle Co."

That subsequently, on July 24, 1899, the plaintiff received a telegram from the defendant:

"Will not ship wheel until you remit for repairs.
    "[Signed]                        Sidney B. Bowman Cycle Co."

That subsequent to this telegram, to complete his trip, he was compelled to purchase a bicycle in Portland, paying therefor $79. The plaintiff then rested, and the court dismissed the complaint on the ground that plaintiff had not proved a cause of action.

I think this was sufficient to justify a finding that the person in charge of the defendant's place of business had authority to make a contract in relation to the business in which the defendant was engaged, and that the acceptance of the bicycle by the defendant and making the repairs was a ratification of the agreement for the repairs. When a manufacturing corporation leaves its place of business in charge of a person who assumes to transact its business, and in pursuance of an agreement there made the corporation accepts an article to be repaired, and proceeds to make the repairs, and to hold the owner of the property liable therefor, there is an acceptance of the work, which is a ratification of the contract to do the work, and the defendant is then estopped from denying the authority of the person assuming to represent the defendant with whom the contract was made. The defendant cannot accept the benefit of the contract and hold the plaintiff to his agreement, and at the same time repudiate the obligation imposed upon it. There can be no doubt, I think, that the act of the defendant in accepting the machine and repairing it was a ratification of the contract of its representative under which the machine was delivered to it, and that the defendant was bound to comply with the terms of the contract. Upon the evidence as it stands, the defendant made an agreement to make these repairs to the plaintiff's

bicycle, and to ship it to the plaintiff on or before the 14th of July. It violated that agreement, and for such a violation the defendant was liable for the damages sustained by the plaintiff.

It is not necessary to determine upon this appeal the measure of damage to which the plaintiff was entitled. There was clearly a valid contract made by a person assuming to represent the defendant, in charge of its place of business, which was ratified by the defendant, and for a breach of that contract the defendant was liable.

· It follows that the judgment appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

PATTERSON and HATCH, JJ., concur. ·

McLAUGHLIN, J. (dissenting). I concur in the opinion of Mr. Justice INGRAHAM in so far as he holds that there was sufficient evidence to go to the jury upon the question of a breach of the contract alleged in the complaint, but upon the record before us the jury would only have been justified in rendering a verdict for nominal damages. The only evidence bearing upon the question of damages is that the plaintiff, upon defendant's failure to deliver the bicycle when repaired at Portland, purchased a new bicycle, for which he paid $79. The cost of the new bicycle, manifestly, is not the proper measure of damages for a breach of the contract, and a verdict for that amount, based upon such evidence, could not be permitted to stand. If it could, then the plaintiff would have the new wheel and his old one by simply paying the cost of the repairs. But, even though the plaintiff was entitled to recover nominal damages, this does not justify us in reversing the judgment in favor of the defendant and ordering a new trial. As was said in Rambaut v. Irving National Bank, 42 App. Div. 147, 58 N. Y. Supp. 1058:

"Unless some substantial right beyond damages is involved, the court will not reverse a judgment against the plaintiff simply for the purpose of enabling him to obtain nominal damages, when it is quite clear from the case presented that he would be entitled to no more."

The general rule is that a judgment will not be reversed for the sole purpose of enabling the plaintiff to recover nominal damages. Stephens v. Wider, 32 N. Y. 351; Throckmorton v. Evening Post, 35 App. Div. 396, 54 N. Y. Supp. 887; Hartmann v. Burtis, 65 App. Div. 481, 72 N. Y. Supp. 914.

I think the judgment appealed from should be affirmed, with costs.

LAUGHLIN, J., concurs.